IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN CORNELIUS LAND

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent*.

Crim. No. ELH-13-0091
Related Civil No. ELH-14-0188

## MEMORANDUM OPINION

Kevin Cornelius Land filed a Motion to Vacate, Set Aside, Or Correct Sentence (the "Petition"), pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. ECF 144. The government has filed an opposition, claiming the Petition fails on the merits. ECF 169.

The Petition has been fully briefed, and no hearing is necessary to resolve it. *See* Local Rule 105.6. For the reasons that follow, I will dismiss the Petition.

## I. Factual Background

On February 28, 2013, Land and five codefendants[1] were charged in Count One of an Indictment with conspiracy to distribute and possess with intent to distribute 280 grams or more of a mixture or substance containing a detectable amount of cocaine base, also known as "crack," a Schedule II controlled substance; 500 grams or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance; a quantity of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance; and a quantity of a mixture or substance containing a

---

[1] Land was indicted along with codefendants Ranson Chandler, Jr.; David Jesse Hotton; Terron Lamont Crump; Tyshon Gabriel Hobson, Sr.; and Floyd Lee Sykes. Although the Indictment contained five counts, Land was named only in Count One.

detectable amount of oxycodone, a Schedule II controlled substance.   ECF 1 (Indictment).   According to the Indictment, the conspiracy operated from about June 2012 through November 28, 2012, in violation of 21 U.S.C. § 841(a)(1) and § 846.

Throughout the case, including during plea negotiations, the guilty plea proceeding, and at sentencing, Land was represented by Wayne Bennett Wiseman, court-appointed counsel.

Land entered into a plea agreement with the government.   ECF 103.   On August 26, 2013, Land pleaded guilty to a lesser included offense of Count One: conspiracy to distribute and possess with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. § 846.   ECF 102; 103; 104; 161.   The offense carried a maximum term of imprisonment of 40 years and a mandatory minimum term of 5-years' incarceration. ECF 103 ¶ 1, 3.   The plea was entered pursuant to Fed. R. Crim. P. 11(c)(1)(C) (ECF 103 ¶ 12), in which the parties agreed to a sentence of 84-months' incarceration.   *Id.* ¶¶ 12, 13.   And, Land waived his rights to appeal, except as to any sentence that exceeded 84 months' imprisonment.   ECF 103 ¶ 15(b).

In the Plea Agreement (ECF 103), the parties agreed that Land had an adjusted offense level of 25.   *Id.* ¶ 10.   This reflected a base offense level of 26, based on the quantity of cocaine foreseeable to Land;[2] a two-level upward adjustment under U.S.S.G. § 2D1.1, because a firearm was possessed in connection with the conspiracy; and a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a) and (b). *Id.* ¶¶ 9, 10.   There was no agreement as to defendant's criminal history or his criminal history category.   *Id.* ¶ 11.

---

[2] The base offense level was obviously calculated before the changes to the drug quantity table that went into effect in November 2014.

Prior to the guilty plea proceedings, Land's attorney asked the Court to hold sentencing immediately following Land's guilty plea. *See* ECF 217 (email from defense counsel dated 8/13/13); ECF 218 (email from defense counsel dated 8/16/13). The government submitted a sentencing memorandum dated August 22, 2013. ECF 101. Wiseman also submitted a sentencing memorandum on the same date, with attachments. ECF 219. In their submissions, counsel for both sides asked the Court to proceed directly to sentencing immediately after the guilty plea and to impose the agreed-upon sentence of 84-months' incarceration, in accordance with the "C plea."

In anticipation of sentencing, defense counsel also submitted to Chambers a copy of the Pre-Plea Criminal History Investigation ("PPI") prepared by the Probation and Pretrial Services Office, dated May 9, 2013. ECF 216.[3] Among other things, the PPI reflected that Land had a Maryland State conviction in 1997 for distribution of crack cocaine, based on conduct that occurred in 1996. It also reflected a subsequent violation of probation in 1999. *See* ECF 216 ¶¶ 5-8; ECF 161 at 9-10 (Transcript). In addition, the PPI showed that, through October 1, 2012, Land was on parole in Maryland for two offenses. ECF 216 ¶¶ 13, 16. According to the PPI, Land had a criminal history category of V. *See* ECF 216 ¶ 21.

---

[3] ECF 216, ECF 217, ECF 219, and ECF 218 were sent by defense counsel directly to Chambers, via email. Apparently, defense counsel never filed his submissions with the Clerk for docketing. In view of Land's filing of the § 2255 Petition, I have directed the Clerk to docket the correspondence sent to Chambers, as well as the PPI.

The guilty plea proceeding was held on August 26, 2013. At the outset of the plea colloquy, the defendant was sworn. ECF 161 at 2. Then, the Court reminded Land that he was under oath, *id.* at 4:[4]

> Q: Now, let me also caution you, sir, that you just took an oath to tell the truth. This does obligate you to answer my questions truthfully. If you were to fail to do so, it's possible you would be subjecting yourself to further charges for something such as perjury or false statement. Do you understand?
>
> A: Yes.

At the guilty plea proceeding, the Court reviewed the defendant's entire plea agreement with him. Land signed the Plea Agreement (ECF 103) on August 8, 2013, just below the following statement:

> I have read this agreement . . . and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Specifically, *I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney*. (Emphasis added).

During the plea colloquy, in response to the Court's inquiry, the defendant indicated that this statement was true and accurate. ECF 161 at 11.

In the government's presentation of the facts, the government represented that Land did not join the conspiracy until its final month in November 2012. ECF 161 at 32. The prosecutor explained that the agreement as to the time when Land joined the conspiracy "was added to the stipulation of facts" on the morning of Land's guilty plea. ECF 161 at 32. Land's delayed entry into the conspiracy spared Land from a two-point increase in his criminal history score; he joined the conspiracy in November 2012, just

---

[4] The Court is represented as "Q" and Land as "A" by the court reporter. However, in other parts of the transcript the court reporter refers to the parties and the Court by name.

after the conclusion of parole in October 2012 in two Maryland cases.  *Id.* at 2-3; *see also* ECF 216 ¶¶ 13, 16.  Thus, the parties agreed that Land's Criminal History Category was IV, rather than the V reflected in ¶ 21 of the PPI.  *See* ECF 161 at 36; ECF 216 ¶¶ 20, 21. An offense level of 25, with a criminal history category of IV, resulted in guidelines for imprisonment ranging from 84 to 105 months.[5]  In other words, the terms of the C plea corresponded to the bottom of the applicable advisory sentencing guidelines.

In accordance with Fed. R. Crim. P. 32(c), I agreed to proceed directly to sentencing.  ECF 161 at 35-37; *see also* ECF 105; ECF 106.  Pursuant to the terms of the C plea, I imposed a sentence of 84-months' incarceration on August 26, 2013.  ECF 105; ECF 106.  The time for filing an appeal expired 14 days after entry of judgment.  Fed. R. App. P. 4(b)(1)(A).  No appeal was filed by Land.  Thus, Land's conviction became final on the expiration of the time for filing a notice of appeal.  *United States v. Clay*, 537 U.S. 522 (2003); *United States v. Wilson*, 256 F.3d 217, 221 (4th Cir. 2001).[6]

Land has since filed this Petition, pursuant to 28 U.S.C. § 2255.  He presents five claims of ineffective assistance of counsel.

First, Land asserts that his attorney should have argued that Land played only a minor/minimum role in the alleged conspiracy and was therefore entitled to a sentencing reduction under U.S.S.G. § 3B1.2.  ECF 144 at 1 (Petition).  He states: "Under these

---

[5] A criminal history category of V would have resulted in guidelines of 100-125 months' incarceration.

[6] Pursuant to a plea agreement, a defendant may waive his appellate rights under 18 U.S.C. § 3742. *See United States v. Archie*, 771 F.3d 217, 221 (4th Cir. 2014), *cert. denied*, 135 S. Ct. 1579 (2015).  If the waiver is valid and the issue is within the scope of the waiver, a waiver will preclude an appeal of "a specific issue. . . ." *Id.*  But, a waiver does not preclude consideration of a claim of ineffective assistance of counsel. *United States v. Brown*, ____ Fed. App'x ____, 2015 WL 2445290 at *1 (4th Cir. May 22, 2015) (per curiam).

circumstances, it is clear that defense counsel should have argued that petitioner played either a minimal or minor role in the offense and requested a 4 to 2 point reduction of his offense level which may have resulted in a significantly lower sentence than the one which was imposed." *Id.*

Second, Land claims he was improperly subjected to a firearm enhancement during plea negotiations. *Id.* at 2. He asserts: "These facts and their implications should have alerted counsel to challenge any references to the handgun as well as the enhancement clause in the plea agreement. His failure to do so caused petitioner to receive a greater sentence and therefore should not be sanctioned by this court." *Id.*

Third, Land argues that defense counsel should have insisted upon a drug quantity hearing. *Id.* He states: "Defense counsel therefore should have sought a quantity hearing because petitioner was held responsible for more than 780 grams when he was only liable for 112 grams. Defense counsel also should have objected to the plea agreements [sic] inclusion of more than 112 grams, and if unsuccessful, should have advised petitioner not to accept the plea agreement and thereafter attempt to renegotiate the plea deal." *Id.*

Fourth, focusing on his 1997 Maryland conviction for distribution of CDS, Land argues that Wiseman should have challenged that conviction through a coram nobis petition. *Id.* He maintains that the Maryland judge failed to comply with the constitutional requirements pertaining to his guilty plea. As a result, Land insists that he received a greater sentence in this case than otherwise would have been imposed. *Id.* at 3.

Last, Land complains that his attorney made unconstitutional "racial comments." *Id.*

Additional facts are included in the Discussion.

## II. Discussion

To challenge successfully a conviction or sentence under § 2255 based on a Sixth Amendment claim of ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in the seminal case of *Strickland v. Washington,* 466 U.S. 668 (1984). *See, e.g., United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011) ("To succeed on a Sixth Amendment claim of ineffective assistance of counsel, the defendant must satisfy the two-prong test set forth in *Strickland.*"); *see also United States v. Rangel*, 781 F.3d 736, 742 (4th Cir. 2015); *Gordon v. Braxton*, 780 F.3d 196, 200 (4th Cir. 2015); *Richardson v. Branker*, 668 F.3d 128, 139 (4th Cir. 2012); *Yarbrough v. Johnson*, 510 F.3d 327, 337 (4th Cir. 2008). *See generally Missouri v. Frye*, ____ U.S. ____, 132 S. Ct. 1399 (2012); *Laffler v. Cooper*, ____ U.S. ____, 132 S. Ct. 1376 (2012); *Padilla v. Kentucky*, 559 U.S. 356 (2010).

The burden is on the petitioner to establish, by a preponderance of the evidence, that "'counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment.'" *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 687); *see United States v. Rogers*, WMN-09-467, 2013 WL 5740476, at * 5-6 (D. Md. Oct. 22, 2013). Generally, a petition filed by a self-represented litigant is construed more liberally than one filed by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Under *Strickland's* two-pronged test, the petitioner must show that his attorney's performance fell "below an objective standard of reasonableness," measured by "prevailing professional norms." *Strickland,* 466 U.S. at 688. This is known as the

"performance prong" of the test.   And, the petitioner must show that his attorney's deficient performance "prejudiced [his] defense."   *Id*. at 687.   To satisfy the "prejudice prong," a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   "A reasonable probability is a probability sufficient to undermine confidence in the outcome" of the proceedings.   *Id*.

A court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.   Nor must a court address both components if one is dispositive.   *Jones v. Clarke*, 783 F.3d 987, 991 (4th Cir. 2015).

The performance prong of the *Strickland* test relates to professional competence. "Keenly aware of the difficulties inherent in evaluating counsel's performance, the Supreme Court has admonished that courts 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Lawrence v. Branker*, 517 F.3d 700, 708 (4th Cir. 2008) (quoting *Strickland,* 446 U.S. at 689).   *See also Lee v. Clarke*, 781 F.3d 114, 122 (4th Cir. 2015).   Indeed, the Fourth Circuit has recognized that the first *Strickland* prong is "'difficult'" to establish. *Lawrence*, 517 F.3d at 709 (quoting *James v. Harrison,* 389 F.3d 450, 457 (4th Cir. 2004)).   Notably, there can be no post-conviction relief based on attorney error where the record establishes that it is "not reasonably likely that [the alleged error] would have made any difference in light of all the other evidence of guilt."   *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

To succeed here, Land must show that Wiseman's representation fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-91.  However, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and constituted "sound trial strategy." *Strickland*, 466 U.S. at 689.  *See*, *e.g.*, *United States v. Terry*, 366 F.3d 312, 316-18 (4th Cir.) (counsel's decision not to call three inmates who allegedly could have offered exculpatory testimony was not below wide range of professionally competent performance), *cert. denied*, 543 U.S. 983 (2004).  Judicial scrutiny is "highly deferential," to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

To satisfy the prejudice component of the *Strickland* test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

## A.  Plea Negotiations

Three of Land's claims of ineffective assistance of counsel pertain to Wiseman's performance in connection with plea negotiations—specifically, his alleged failure to insist upon a sentencing reduction for Land's minor/minimum role in the conspiracy; defense counsel's alleged failure to challenge the firearm adjustment; and Wiseman's alleged failure to insist upon a drug quantity hearing.

The Sixth Amendment right to counsel extends to the plea-bargaining process. *McMann v. Richardson*, 397 U.S. 749, 771 (1970).  As the Supreme Court said in *Hill v. Lockhart*, 474 U.S. 52, 58 (1985), the two-part test under *Strickland* "applies to

challenges to guilty pleas based on ineffective assistance of counsel." In *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988), the Fourth Circuit described a defendant's burden in a post-guilty plea claim of ineffective assistance of counsel (quoting *Hill v. Lockhart*, 474 U.S. at 59):

> When a defendant challenges a conviction entered after a guilty plea, [the] "prejudice" prong of the [*Strickland*] test is slightly modified. Such a defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

*Accord Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000); *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1294-99 (4th Cir. 1992).

In general, the government points to the favorability of Land's plea agreement. Among other things, it observes that Land pled guilty to a lesser included offense and his plea agreement resulted in a reduced sentence of 84-months' imprisonment, rather than the mandatory minimum of ten years that he faced as originally charged. ECF 1; ECF 169 at 1 (Opposition). The government also asserts, *inter alia*, that had Land insisted during plea negotiations upon the reductions he is now seeking, the government would have withdrawn the plea offer and gone to trial on the original charge. ECF 169 at 9.

Regarding Land's claim of entitlement to a "minor/minimum role" reduction, Land insists that Wiseman "should have argued that petitioner played either a minimal or minor role in the offense and requested a 4 to 2 point reduction of his offense level. . ." ECF 144 at 1. In this regard, Land claims that his conduct was not essential to the conspiracy and he only participated in it for one week.

The government points out that it made numerous concessions to defense counsel, including sparing Land from a ten-year mandatory minimum sentence, but that it "would

never have stipulated that Land was a minor or minimal participant." ECF 169 at 7. The government also maintains that Land is factually incorrect in claiming he did not join the drug conspiracy until its final week at the end of November 2012. As reflected in the Statement of Facts set forth in the plea agreement, for example, ECF 103 ¶ 8, the defendant was intercepted via wiretaps in phone calls that occurred on November 17, 2012, and November 23, 2012. And, the government insists that it was prepared to show, through wiretap calls between Land and codefendant Chandler, that beginning on November 1, 2012, Land was responsible for trafficking of a significant quantity of drugs and for negotiating the sale of a firearm to Chandler. ECF 169 at 6-7.

Land seems to overlook that, at defense counsel's urging, the government agreed to limit Land's participation to the last month of the conspiracy, *i.e.*, November 2012. ECF 161 at 32. Although Land did not receive a reduction for a minor role, the government's concession had the effect of reducing Land's criminal history category from V to IV. ECF 169 at 3. If Land had been deemed a participant as of October 1, 2012, he would have had two more criminal history points, and a criminal history category of V, because he was on State parole at that time.

Nor is a minor role necessarily warranted based on length of involvement in a conspiracy. The wiretaps showed that Land made multiple cocaine purchases over a four-week period, before the conspiracy was brought to an unexpected end for the conspirators. His purchases alone amounted to more than 336 grams of cocaine. *See* ECF 169 at 2. And, according to the government, "Chandler's drug trafficking during the month [of] November 2012 was reasonably foreseeable to Land." *Id.* In addition, Land was caught on wiretap trying to sell a firearm to Chandler. These facts do not cry out for

a minor role reduction, particularly given the government's willingness to agree to a criminal history category of IV, rather than V, as set forth in the PPI.

Land also claims that Wiseman should have "challenge[d] any references to the handgun as well as the enhancement clause in the plea agreement." *Id.* In his view, counsel's "failure to [challenge the firearm adjustment] caused petitioner to receive a greater sentence and therefore should not be sanctioned . . . ." *Id.* This argument is baseless.

According to the government, wiretaps recorded Land negotiating the sale of a handgun to codefendant Chandler, who had a history of violence. ECF 169 at 3-4. The government maintains that the two level upward adjustment was of particular importance to the government. *Id.* at 4. It also asserts, ECF 169 at 7-8 (emphasis in original):

> . . . Land's attorney reasonably concluded that, based on the text messages [that were intercepted] as well as other evidence that Chandler was seeking to purchase a firearm in November 2012, the government could have shown by a preponderance that the two-level enhancement applied. Further, had defense counsel chosen to litigate this issue, he would have cost his client at least part of the standard three-level reduction for acceptance of responsibility. He would also have opened the door to litigation of *other* relevant conduct, such as, for example, Land's continued efforts to purchase cocaine after the conclusion of the charged conspiracy.

The government concludes: "Land's attorney reasonably decided that the risks of challenging the two-level enhancement outweighed the unlikely benefits. That decision fell squarely within the 'wide range of professionally competent performance' that courts have applied when conducting the *Strickland* analysis." *Id.* at 8.

In addition, Land complains that Wiseman should have insisted upon a drug "quantity hearing" during plea negotiations. In particular, Land argues: "Defense counsel also should have objected to the plea agreements [sic] inclusion of more than 112 grams,

and if unsuccessful, should have advised petitioner not to accept the plea agreement and thereafter *attempt to renegotiate the plea deal*." ECF 144 at 2 (emphasis added). Further, he states: "Defense counsel . . . should have sought a quantity hearing because petitioner was held responsible for more than 780 grams when he was only liable for 112 grams." *Id.* This contention is specious.

Exclusive of Chandler's conduct, which the government claims was foreseeable to Land, the government claims that the wiretaps showed that Land personally purchased more than 336 grams of cocaine. ECF 169 at 2. The government also asserts, ECF 169 at 8-9:

> Under the actual facts of this case, the government could easily have shown that Land was responsible (through his own actions and those of his coconspirators) for more than 500 grams of powder cocaine. Thus, having already secured a favorable deal from the government (i.e., a plea to a lesser included offense), defense counsel reasonably decided not to fight an additional, losing battle.

Based on the drug quantity to which Land agreed, under oath, his base offense level at the time was 26, which pertained to "At least 500 G but less than 2KG of Cocaine." That offense level was lower than what it would have been if Land had been convicted as originally charged. And, as the government observes, if the defendant wanted a drug quantity hearing, it would not have agreed to the plea; it would have chosen to litigate the issue before a jury. ECF 169 at 9. At the very least, the government would not have moved for the one-point reduction in the offense level under U.S.S.G. § 3E1.1(b) for timely acceptance of responsibility.

The recent case of *United States v. Flores-Alvarado*, 779 F.3d 250 (4th Cir. 2015), decided March 3, 2015, is informative. There, the defendant pleaded guilty to conspiracy to distribute, *inter alia*, 5 kilograms or more of cocaine and 1,000 kilograms

or more of marijuana.   *Id.* at 252.   The Presentence Report recommended that the defendant be held accountable for at least 3886.3 kilograms of marijuana and 136.125 kilograms of cocaine, which converted to a total marijuana equivalent of 31,111.16 kilograms. *Id.* at 252. The defendant disputed the drug quantity attributed to him, which resulted in an advisory sentencing range of life imprisonment. *Id.* at 253. And, the objections "were not mere quibbles over . . . drug totals, but were specific and factually grounded. . . ." *Id.* at 255. Therefore, the district court was "obligated to resolve the dispute." *Id.* Because the district court failed to make the required factual finding regarding the drug quantity attributed to Flores-Alvarado, the Fourth Circuit vacated his life sentence and remanded for resentencing. *Id.*

Notably, the Fourth Circuit said that, "'in order to attribute to a defendant for sentencing purposes the acts of others in jointly-undertaken criminal activity, those acts must have been within the scope of the defendant's agreement *and* must have been reasonably foreseeable to the defendant.'" *Id.* (citation omitted). This is important because "[t]he sentences imposed for drug offenses are driven by the quantity of drugs involved." *Id.*

As I see it, this case is quite unlike *Flores-Alvarado*. Land was initially charged with conspiracy to distribute 280 grams of crack and 500 grams of cocaine, as well as heroin. ECF 1. He pled guilty to the lesser included offense of conspiracy to distribute 500 grams or more of cocaine. ECF 103 ¶ 1; *see also* ECF 104; ECF 105. The stipulated Statement of Facts in the plea agreement also provided that Land conspired to distribute more than 500 grams of cocaine, and that this quantity was foreseeable to him. ECF 103 ¶ 8; *see also id.* ¶ 1. Moreover, during the plea colloquy I asked Land if he understood

- 14 -

that he was "pleading guilty to conspiracy to distribute . . . 500 grams or more . . . of cocaine . . . ."  ECF 161 at 11.  Land indicated he understood the question.  *Id.* at 12. And, I followed up, asking:  "Do you admit, sir, you're guilty of the lesser-included offense I just reviewed with you?"  *Id.*  Land answered:  "Yes."  *Id.*

During the plea colloquy, the Assistant United States Attorney, Peter Martinez, provided a summary of the stipulated facts that the government was prepared to prove beyond a reasonable doubt if the case had proceeded to trial.  He stated, in part, ECF 161 at 32:

> The calls intercepted by the wiretaps on Mr. Chandler's and other telephones, together with seizures made following arrests and during the execution of search warrants, as well as evidence obtained through other investigative measures, showed Mr. Land and his coconspirators distributed, and it was foreseeable to Mr. Land that he and his coconspirators would distribute, more than 500 grams of cocaine.
> The conspiracy operated from June 2012 through and including November 28, 2012.  Mr. Land joined the conspiracy in November 2012.
> ***
> And I would just add that that last sentence regarding the timing of Mr. Land's agreement to join the conspiracy was added to the stipulation of facts this morning.

After hearing the facts presented by the government, Land expressly admitted his guilt, which included guilt based on the statement of facts presented by the government. The following exchange is pertinent, ECF 161 at 33:

> THE COURT: Any additions, corrections, or modifications to the summary of facts, Mr. Wiseman?
> MR. WISEMAN: No, Your Honor.  Thank you.
> THE COURT: Mr. Land, is that an accurate summary of the facts the government would prove if the case went to trial?
> THE DEFENDANT: Yes.
> THE COURT: Did you, in fact, commit the crime as summarized by the government?
> THE DEFENDANT: Yes.
> THE COURT: Do you still wish to plead guilty?
> THE DEFENDANT: Yes.

- 15 -

THE COURT: Are you pleading guilty freely and voluntarily?
THE DEFENDANT: Yes.
THE COURT: Are you pleading guilty because you are in fact guilty as charged?
THE DEFENDANT: Yes.

In *United States v. Lemaster*, 403 F.3d 216, 222 (4th Cir. 2005), the Court noted that, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Land's statements, under oath, reflect, at a minimum, that he knowingly and voluntarily agreed to the drug quantity, which was reduced substantially from the initial charge.

Under the prejudice prong of *Strickland*, Land "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hooper*, 845 F.2d at 475. Land has not met this burden. In light of the evidence against defendant and the government's concessions to effectuate the plea, there is no basis to conclude that defense counsel's performance fell below the "wide range of reasonableness" or that "a reasonable defendant in these circumstances would not have pled guilty." *Burket*, 208 F.3d at 190-91.

In *Hooper*, *supra*, 845 F.2d 471, the defendant, who had a history of mental illness, pled guilty in a Virginia court to a reduced charge of second-degree murder and to two other charges. *Id.* at 472. He was sentenced to a total of 41 years' imprisonment. *Id.* Thereafter, he filed a petition for a writ of habeas corpus, claiming ineffective assistance of counsel so as to render his guilty plea invalid. *Id.*

Hooper's lawyers had failed to obtain a psychiatric evaluation, and thus "Hooper made his choice [to plead guilty to a murder charge] without the benefit of a psychiatric

evaluation of his mental condition at the time he committed the crimes." *Id.* at 474. Hooper argued that his lawyers should have investigated an insanity defense. *Id.* at 472. Nevertheless, "[t]he burden [was] on Hooper to establish a reasonable probability that if his lawyers had obtained a psychiatric report, he would have rejected the plea agreement," *id.* at 475, or "would have led his attorneys to recommend that he do so." *Id.* Examining the psychiatric report obtained years later against "the circumstances Hooper faced at the time he decided to plead guilty," the Court was not persuaded that the report provided evidence sufficient "to establish a reasonable probability that had Hooper's lawyers obtained a sanity evaluation" at the time, "Hooper would have declined the plea agreement in favor of a jury trial." *Id.* at 475-76.

The Court observed that "[b]y accepting the plea agreement," the murder charge was reduced to second-degree murder. *Id.* at 475. Moreover, it noted that Hooper would have "faced serious obstacles in attempting to pursue an insanity defense." *Id.*

Land does not suggest that he would have rejected the plea agreement and proceeded to trial on Count One, but for the legal representation provided by Wiseman. And, it is salient that, as originally changed, Count One carried a mandatory minimum sentence of ten years' imprisonment. By accepting the plea agreement, Land avoided a mandatory minimum sentence of ten years. His negotiated, agreed upon sentence of seven years was well below the statutory maximum of 40 years that applied to the reduced charge, and was three years below the mandatory minimum sentence applicable to Count One as originally charged.

Wiseman's performance of securing concessions from the government for a favorable plea deal was sound legal strategy and is entitled to a presumption of

reasonableness.  That a plea bargain is "favorable" to a defendant and that accepting it was a "reasonable and prudent decision," is itself evidence of "[t]he voluntary and intelligent" nature of the plea.  *Fields*, 956 F.2d at 1299.  Land has not provided a basis to question the veracity of his sworn statements made during the plea colloquy.  Nor has Land met his burden of showing that, but for counsel's alleged errors, he would have rejected the plea agreement and insisted on trial.  *Cf. Hill v. Lockhart*, 474 U.S. 52 at 60 (noting that "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial.").

### B.  Coram Nobis

Petitioner asserts that, at the outset of his case, he instructed Wiseman to file a coram nobis petition regarding his 1997 Maryland conviction, and that Wiseman failed to do so.  The issue surfaced during the Rule 11 guilty plea colloquy, when the Court propounded questions to Land to determine whether he was satisfied with his counsel's performance.

At the rearraignment, in response to the Court's inquiry, Land expressly indicated that he was satisfied with Mr. Wiseman's representation of him, and had no complaints.  ECF 161 at 6.  However, when the Court asked Land if "there [was] anything [he] wanted Mr. Wiseman to do for [Land] that he failed to do," *id.* at 6-7, Land responded, "Yes." *Id.* at 7.  Upon request of the Court, Land elaborated, and complained that he had asked his attorney to file a coram nobis petition in connection with a prior Maryland conviction for drug distribution.  *Id.* The following exchange is pertinent.  ECF 161 at 6-8: [7]

---

[7] The Court is represented as "Q" and Land as "A" by the court reporter.

Q:  Is there anything you wanted Mr. Wiseman to do for you that he failed to do?

A:  Yes.

Q:  And what is that?

A:  I asked to file, for him to file a coram nobis, and he wasn't able to do so.

Q:  Let's talk about that.  A coram nobis would be in connection with another matter, not this case.  Is that right?

A:  Yes, ma'am.

Q:  You're talking about a state court case, State of Maryland case?

A:  Yes, ma'am.

Q:  Okay.  But let me confine my questions to this case.  Is there some concern on your part that the result of such an action might impact the resolution of this case today, your federal case?

A:  No, ma'am.

Q:  I'm going to ask Mr. Wiseman, is there anything about this coram nobis that, if he were successful, would affect anything about this case?

MR. WISEMAN:  I don't know if there's really a basis.  I can't conceive that it would have changed the outcome, in any event.

Q:  Okay.  So you've told me what he didn't do for you.  Let me ask you this question.  Is there anything about, that you asked Mr. Wiseman not to do that he went ahead and did, anyway?  The flip side of that question?

A:  No.

Q:  Okay.  Are you sufficiently satisfied with his representation of you and the advice he has given you such that you are able to proceed today with a knowing and intelligent plea of guilty in this case?

A:  Yes.

The exchange continued, ECF 161 at 8-10:

Q:  Counsel, is there anything you want to add in response to that

question?

MR. WISEMAN:  Which question?

THE COURT:  The one about the coram nobis.

MR. WISEMAN:  Not really, Your Honor.  I can probably expound on it a bit.  I didn't realize this was something that was going to be raised by my client in some fashion.

        We discussed it.  I told him his options that were available, which was seek to have counsel look into it for him.  I didn't hear anything that necessarily led me to believe or see any documents that would suggest that there would have been any successful avenue to be pursued in that regard.  And it wasn't something that I remember being specifically requested of me.

THE COURT:  Well, let me ask you this one thing.  Is there anything about his guidelines that would change if that conviction were somehow set aside, from what either you know or, Mr. Martinez, anything that you know?

[AUSA] MARTINEZ:    Your Honor, I am not familiar with which conviction Mr. Land asked to have a coram nobis petition filed for.  So it's hard for me to answer that question unless I know which conviction we're talking about.

THE COURT: Okay.  Mr. Land, which conviction were you talking about for which you wanted some petition filed?

THE DEFENDANT:  It was the one from '96.[8]

THE COURT: Okay.  And what was that for?

THE DEFENDANT:  It was for the distribution.

THE COURT:  Okay.  What was your claim about that for which you wanted coram nobis filed?

THE DEFENDANT:  For allocution purposes.

THE COURT:  You mean—were you challenging the conviction itself?

THE DEFENDANT:  No.  I wasn't challenging the conviction.  I was challenging the actual allocution aspect of me being fully aware of everything that I was taking a plea to, all the consequences behind it.

THE COURT:  Okay.

THE DEFENDANT:  General knowledge of it.

THE COURT:   Let me now turn back to the government.   Is there anything about that information that was just provided, if Mr. Land were to be successful somehow in this challenge under coram nobis, would this affect his guideline calculation in any way?

MR. MARTINEZ:  Your Honor, the '96 conviction, because there was a subsequent violation of probation in 1999, it does count towards his criminal history score.  There were three criminal history points assessed on account of that conviction.  So out of his nine criminal history points, three are attributed to that conviction.

So, hypothetically, if that conviction were set aside, it would, I believe, result in, he would be, if he had six criminal history category points, he would be in Criminal History Category Three rather than Four.  So, hypothetically, if it were to be set aside, it would have an impact on his criminal history category.

Q:  So let me get back to you, Mr. Land.  You've raised this complaint about your lawyer's services, limited as it is, to wanting him to challenge a state conviction.  Are you still willing to go forward today with your plea of guilty?

A:  Yes.

---

[8]  The parties sometimes referred to a 1996 conviction.  The offense in issue occurred in 1996, but the conviction for that offense actually occurred in 1997.

Prior to the conclusion of the Rule 11 proceeding, Mr. Wiseman said, ECF 161 at 34:

> I was actually told that he was going to have other counsel, frankly, handle [the corm nobis].  It never materialized, quite honestly. . . . I was not aware that this was something that I need to pursue any further.  But I heard no articulable basis to believe that this would be a successful application. . . .  And I just tell you one other thing.  I never refused to do anything for this client, quite honestly.

As noted, the Court had specifically asked Land whether he wanted to go forward with his guilty plea, notwithstanding "this complaint about your lawyer's services . . . ." ECF 161 at 10.  Land indicated that he wanted to proceed.  *Id.* at 10-11.  He said: "I wasn't challenging the conviction.  I was challenging the actual allocution aspect of me being fully aware of everything that I was taking a plea to, all the consequences behind it."  *Id.* at 9.

In my view, even assuming Wiseman was the one who was supposed to explore coram nobis relief for Land, petitioner has failed to demonstrate that his lawyer's evaluation of a potential coram nobis petition fell below an objective standard of reasonableness.  There is a presumption of regularity afforded final criminal judgments. *Parke v. Raley*, 506 U.S. 20, 29 (1992).  And, a defendant who challenges a prior conviction used to enhance his sentence in connection with a later offense bears the burden of showing that the prior conviction was invalid.  *United States v. Jones*, 977 F.2d 105, 109-11 (4th Cir. 1992).  Further, "[c]oram nobis is an extraordinary remedy that should be granted only 'to correct errors of the most fundamental character where the circumstances are compelling to achieve justice.'"  *Ford v. United States*, RDB-09-0219, 2013 WL 3255447 at *7 (D. Md. Jun. 19, 2013) (citation omitted).

Here, the PPI report, ECF 216, reflects that Land was represented at the time of the 1997 Maryland distribution conviction.  *See* ECF 169-2.  Further, it reflects that Land pleaded guilty and received an eight-year sentence, with all but seven years suspended. *Id.*  And, as noted, Wiseman stated that he and Land discussed the possibility of obtaining coram nobis relief, ECF 161 at 8, but Wiseman did not "hear anything necessarily that led me to believe or see any documents that would suggest that there would have been any successful avenue to be pursued in that regard."  *Id.*

In any event, even if Land had prevailed in a coram nobis proceeding, the benefit would have been a reduction of his criminal history category from IV to III.  An offense level of 25 and a criminal history category of III, rather than IV, would have resulted in advisory sentencing guidelines of 70 to 87 months' imprisonment.  The C plea of 84 months' imprisonment fell within those guidelines.

## C.  Racial Bias

Land alleges that Wiseman made a racially insensitive comment while preparing his client for sentencing.  ECF 144 at 3.  He alleges: "During a conversation regarding issues to be raised at the sentencing hearing, [Wiseman] asked the following question: 'Would you prefer a black attorney because you guys usually prefer a black lawyer?'" *Id.*  Land suggests that this query created an "aura of racism" and "casts doubt on defense counsel's judgment, motives and performance and should not be tolerated."  *Id.*  In Land's view, he is "entitled to a reversal."  *Id.*

Even assuming that this allegation is true, Land does not assert that it affected his lawyer's performance in any particular way.  Absent such an allegation, Wiseman's alleged comments cannot form the basis for a claim of deficient performance.

In evaluating a post-guilty plea claim of ineffective assistance, statements previously made under oath, affirming satisfaction with counsel, are binding on the defendant, absent "clear and convincing evidence to the contrary." *Fields*, 956 F.2d at 1299 (*citing Blackledge v. Allison*, 431 U.S. 63, 74-75 (1977)). *Accord United States v. Lemaster*, *supra*, 403 F.3d at 220-23 (affirming summary dismissal of § 2255 motion, including ineffective assistance claim, noting inconsistent statements made during Rule 11 hearing). Land's plea colloquy, ECF 161 at 6-8, contains the following exchange with the Court:

> Q:  Are you satisfied with the legal services provided by Mr. Wiseman to you?
> A:  Yes.
> Q:  Do you have any complaints at all about his legal representation?
> A:  No.
>
>         * * *
>
> Q:  Okay.  Are you sufficiently satisfied with his representation of you and the advice he has given you such that you are able to proceed today with a knowing and intelligent plea of guilty in this case?
> A:  Yes.

Land offers no explanation as to why he apparently withheld such grave concerns from the Court when the Court directly asked him, while he was under oath, about counsel's performance.  Notably, he did not hesitate to raise the coram nobis issue, which suggests that he was not so intimidated by the guilty plea proceeding as to be unable to express his complaint.

## II.  Conclusion

To succeed in his § 2255 petition, the burden is upon Land to establish that, but for his attorney's deficient performance, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 494.  Specifically, Land is required to show that he would have rejected the plea offer and insisted upon trial.  *Hooper*, 845 F.2d at 475.

Land has not met this burden.   Moreover, he has not demonstrated ineffective assistance of counsel.   Therefore, the petition is DENIED.   A certificate of appealability shall not issue.

An Order follows.


Date: June 5, 2015                                      _____/s/_____

                                                       Ellen Lipton Hollander
                                                       United States District Judge